[Civ. No. 20174. First Dist., Div. Two. Mar. 21, 1962.]

STEINER LUMBER COMPANY OF CONTRA COSTA, INC., Plaintiff and Respondent, v. JOHN P. STEGGE et al., Defendants and Appellants.

Laura O. Coffield for Defendants and Appellants.

Ring, Turner, Ring & Wright and Harold H. Turner for Plaintiff and Respondent.

SHOEMAKER, J.—John Stegge and Virginia Stegge, his wife, were the owners as community property of all of the stock of the Stegge Development Co. The stock stood in the name of John Stegge, who was the president of the company and actively engaged in its operation. The company was developing a subdivision known as Glenwood, located in Marin County.

On January 29, 1957, the company owed plaintiff Steiner Lumber Company of Contra Costa, Inc., a sum in excess of $88,000 for materials delivered to 95 lots in the subdivision. The company did not have sufficient funds to pay this debt. It was having a very difficult time in continuing its operation and both parties were desirous of providing for the payment of the debt, and at the same time furnishing a means whereby funds might be obtained so that the corporate business could continue. Therefore, they entered into a written contract whereby plaintiff subordinated its mechanic's lien rights to enable Stegge Development to secure construction loans and to close certain escrows on lots within the subdivision. In consideration of plaintiff's act of subordination, Stegge Development assigned plaintiff the right to receive $28,000 from the escrows when they were closed, and also agreed, in paragraph 2 of the contract, to pay the remainder of its debt in three installments: $25,000 on February 15, 1957; $25,000 on April 1, 1957; and $10,000 on May 1, 1957. It was also provided by paragraph 3 of the contract that in the event any of the designated escrows were not closed by December 31, 1957, then the entire amount of the unpaid debt should immediately become due and payable. Appended to the contract, and in consideration of plaintiff's subordination therein, defendants John and Virginia Stegge agreed, jointly and severally, to perform paragraphs 2 and 3 in the event that Stegge Development should fail to do so. Thereafter, the corporate affairs went from bad to worse, and finally proceedings under the Bankruptcy Act were commenced.

On July 31, 1957, plaintiff and others, as a step in the rehabilitation of the company, signed a written contract called "Consent to Sales of Real Property," wherein it was agreed that sales of certain lots within the Glenwood subdivision, free of any liens held by them, could be made, the proceeds of said sales, however, to be subject to the liens held by the respective parties and to be impounded subject only to distribution

upon order of the bankruptcy court. Subsequent to August 15, 1957, plaintiff executed a "Release and Waiver" whereby it agreed to relinquish any rights it might have under the California mechanic's lien law, for the express purpose of inducing a specified title company to issue title insurance on certain lots in the Glenwood subdivision.

December 31, 1957 passed without any kind of payment having been made on the indebtedness. Plaintiff then commenced the instant action against defendants to enforce their contractual obligation to pay the full amount of the indebtedness.[1]

From the judgment entered against the defendants John and Virginia Stegge, and in favor of plaintiff, defendants appeal.

The facts above set forth were not disputed at the trial, where defendants sought to avoid liability on the ground that they were bound as mere sureties and, as such, were released from their obligation when plaintiff impaired its right to go against Stegge Development Co., the principal debtor, by executing the "Consent to Sales of Real Property" and the "Release and Waiver" of its mechanic's lien rights. The trial court held against this defense, finding that defendants' contract was an original obligation and further finding that "Even if said contract was construed as a suretyship obligation of defendants," the execution by plaintiff of the "Consent to Sales of Real Property" and the "Release and Waiver" in no way altered or impaired any remedy or right of plaintiff against Stegge Development Co.

Appellants contend that the judgment must be reversed because the findings upon which it is based find no support in the evidence. We do not agree. It is apparent that if there is adequate evidentiary support for either of the two grounds specified in the findings, the judgment must be upheld. It therefore becomes unnecessary to consider whether the trial court was correct in holding that appellants were bound as principals rather than as sureties. We assume, for the purposes of this appeal, that appellants were mere sureties, and doing so we are satisfied that the record supports the finding that respondent, by executing the "Consent to Sales of Real Property" and the "Release and Waiver,"

---

[1] Stegge Development Co. appears not to have been joined as a co-defendant for the reason that it had been declared a bankrupt.

effected no alteration or impairment of its rights against Stegge Development Co.

Appellants rely on the rule set forth by Civil Code, section 2819, which provides that: "A surety is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the surety the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended." Appellants argue that by consenting to the sales of certain lots in the Glenwood subdivision and by waiving its mechanic's lien rights on these lots, respondent relinquished its right to hold Stegge Development Co. and thus effected a release of appellants. Such an argument is of little merit, in view of the fact that respondent had already subordinated its mechanic's liens by virtue of the very contract in which appellants consented to become bound as sureties. The contract of January 1957 provides that respondent, in order to permit Stegge Development to sell certain lots in the Glenwood subdivision, agreed not to assert its lien rights but to take in place thereof an assignment of proceeds to be paid over when certain designated escrows were closed. Respondent's first duty to appellants, as sureties, was to protect these assignment rights. In order to do so, respondent was certainly in no position to assert its lien rights, in violation of its contract with Stegge Development, and thus impede the closing of the escrows. On the contrary, respondent's duty was to facilitate the gathering of moneys in accordance with its contract, and which was the sole purpose of both the instruments executed by respondent.

We do not see how respondent altered or impaired its rights against Stegge Development Co. by consenting to the sale of the Glenwood lots or by waiving its right to assert its mechanic's liens on those lots. Consent to the sales was clearly a prerequisite to the closing of the escrows and was an act which appellants surely must have anticipated when they originally consented to become sureties. It must be remembered that John Stegge was the sole stockholder and president of Stegge Development Co., as well as president or general manager of several other corporations, all of which had pieces of the development undertaken at Glenwood. The record discloses that the success or failure of Stegge Development Co.

was vital in the operation of each of the other companies. The waiver of lien rights was ''given for the express purpose of inducing CALIFORNIA PACIFIC TITLE INSURANCE COMPANY and/or SAN RAFAEL LAND TITLE COMPANY to issue its policy of title insurance without setting up therein any exception as to the possibility of mechanics' liens.'' Respondent's act of waiving its mechanic's lien rights, far from impairing its security, served to protect it by removing the last obstacle which could impede the closing of the escrows and the payment to respondent of the assigned funds.

In view of these circumstances, none of the cases cited by appellants can be deemed applicable. In *Driscoll* v. *Winters* (1898) 122 Cal. 65 [54 P. 387], and *Boteler* v. *Conway* (1936) 13 Cal.App.2d 79 [56 P.2d 587], the creditors materially altered the terms of the principal obligation without the consent of the sureties. In *McMannus* v. *Temple Estate Co.* (1935) 10 Cal.App.2d 419 [51 P.2d 1124], plaintiff creditor, without the consent of the guarantor, altered the principal contract in such a manner as to give several new liens priority over the trust deed which the defendant had guaranteed. In *Kiessig* v. *Allspaugh* (1891) 91 Cal. 234 [27 P. 662], the plaintiff paid over to the principal a sum which was specifically intended to indemnify the surety.

In the case at bar, there would appear to have been no alteration whatever in the terms of respondent's contract with Stegge Development Co. Respondent at no time ever relinquished or waived its assigned rights to the escrow proceeds. Neither did respondent ever agree to any variation as to the manner or time within which Stegge Development Co. was to pay its indebtedness to respondent. On the contrary, respondent appears to have done everything within its power to carry out the contract. Under these circumstances the trial court properly concluded that appellants, even if liable only as sureties, were not released from their obligation.

Judgment affirmed.

Kaufman, P. J., and Agee, J., concurred.