# Bauschard Company, Appellant, *v.* Fidelity & Casualty Company of New York.

*·Practice, C. P.—Trial—Reservation of question of law.*

A reservation of a question of law in the form, " Whether there is any evidence in the case that will entitle the plaintiff to a verdict " is a good reservation, if it in effect raises a question of law which determines the case.

*Principal and surety—Contract—Release of surety.*

A surety has the right to require a strict compliance with the terms of the contract of suretyship. Any alteration of the contract by the principal party without the consent of the surety is fatal to its validity,. as against the surety. This is true although the surety sustains no injury by the change and even if the change be for his benefit.

It is a rule well established that the, surety shall not be bound beyond the extent of his engagement, which appears from the very terms of the contract and the nature of the transaction to have been in contemplation at the time of entering into it, and that his liability cannot without his consent be extended, enlarged or varied, either by the obligee or by operation of law.

The right of the principal to postpone the fulfilment of the contract of suretyship is at variance with that of the surety to demand its punctual performance, or to perform it himself and sue for indemnity, and generally any act of the creditor which prevents the surety from insisting on the fulfilment of the contract as originally made, or which entitles the principal debtor to delay, is a ground of defense in an action against the surety.

When a creditor makes an agreement, without the consent of the surety, by which he disables himself from bringing suit, he acts against equity and ought not to hold the surety responsible.

Argued May 20, 1902. Appeal, No. 14, April T., 1903, by plaintiff, from judgment of C. P. Erie Co., Nov. T., 1899, No. 22, for defendant non obstante veredicto in case of the Bauschard Company v. Fidelity & Casualty Company of New York. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit on a bond of suretyship. Before MILLER, P. J., specially. presiding.

The facts appear by the opinion of the Superior Court.

*Errors assigned* were (1) in reserving the question of law,

quoting the reservation; (4) in entering judgment for defendant non obstante veredicto.

*T. A. Lamb* and *H. E. Fish*, with him *J. S. Rilling*, for appellant, cited on the form of question reserved: Witman v. Smeltzer, 16 Pa. Superior Ct. 285; Mayne v. Fidelity & Deposit Co., 198 Pa. 490; Casey v. Penna. Asphalt Paving Co., 198 Pa. 348; Konicz v. Orient Ins. Co., 17 Pa. Superior Ct. 550; Franklin v. Hancock, 18 Pa. Superior Ct. 398.

Cited as to the release of the surety: Wyke v. Rogers, 1 DeG. M. & G. 408; Cope v. Smith, 8 S. & R. 110; Henderson's Administrator v. Ardery, 36 Pa. 449; Clippinger v. Crepps, 2 Watts, 45; 2 Parsons on Contracts, p. 713; Addison on Contracts, p. 1075; Hoffman v. Brown, 6 N. J. L. 429; Winans v. Huston, 6 Wend. (N. Y.) 471; Perkins v. Gilman, 8 Pick. 229; Fullam v. Valentine, 11 Pick. 156; Gibson v. Gibson, 15 Mass. 112.

*J. M. Sherman* and *S. A. Davenport*, for appellee.

OPINION BY WILLIAM W. PORTER, J., November 19, 1902:

The judgment for the defendant in this case was entered non obstante veredicto, on a point reserved. Much space in the briefs of counsel has been devoted to a discussion of the question whether the reservation was good. It is in this form: " Whether there is any evidence in the case that would entitle the plaintiff to a verdict." Authority is not wanting to sustain this reservation: Fisher v. Scharadin, 186 Pa. 565; Newhard v. Penna. R. R. Co., 153 Pa. 417. Other precedents are accessible which cast a doubt on the form, but where such a reservation in effect raises a question of law which determines the case, " the question with us is whether a case so carefully and impartially tried as was this one shall be sent back for retrial, only because of want of form, where the entire substance of the law has been effectively administered, for nothing will be gained thereby. On a retrial the court below, on a construction of the writings, would properly peremptorily direct a verdict for the defendant. We are of the opinion that such a fruitless result is not necessary: " Williams v. Crystal Lake Water Co., 191 Pa. 98.

It will be seen from the discussion following that the reservation by the court below, in effect, raises a question of law, and that on a retrial the court below would, on a construction of the writings, be required to direct a verdict for the defendant company.

The plaintiff company sues on a surety bond given by the defendant, a surety company, agreeing to secure to the plaintiff company the payment of certain promissory notes, to be given by one Fox in part payment for interior woodwork to be manufactured for him and used in the construction of certain houses in New York city, the balance of the purchase money being agreed to be paid by Fox in cash. Fox failed in his cash payments. The first note became due. The plaintiff company brought this suit on the bond. A lien was filed by the plaintiff company against the real estate of Fox in New York. Liens were also filed by other creditors. Fox endeavored to induce one Butler (who was a mortgagee) to loan additional money to finish the building operation. The negotiations were in progress in October, 1899. A representative of the plaintiff company, with his attorney, visited New York, and there met Fox, with the attorney for Butler and one Tyrrill, who was the accident examiner of the surety company. The last named, in the name of the company, finally assented to the release of the plaintiff company's lien in consideration of an extension of time for the filing of an answer by the surety company in the pending suit on their bond. This assent was in writing, and dated October 30, 1899. Subsequently, on November 23, 1899, the plaintiff entered into a written agreement with Fox and Butler that the company would complete the shipment of the goods; that the balance due them was a sum named in cash (in addition to the notes theretofore delivered by Fox); that the payment of this cash should be postponed by the giving of a note by Fox at four months; that the plaintiff company should file no liens against the houses of Fox, and finally, and most important, that the plaintiff company should not, within four months, commence any action suit or proceeding for the recovery of the amount due by Fox to the plaintiff company.

This agreement went into effect while the present suit against the surety company was pending. The latter claim that this new agreement exonerated them from all liability on their bond

because the time of payment by Fox of his notes (for which payment the defendant company was surety) was deferred by agreement not to sue, thereby changing the contract which formed the basis of the contract of the defendant company to become surety. This contention is divided by the appellant into two propositions:

(1) That there was evidence showing assent by the surety company to the execution of the new agreement between the plaintiff company, Fox and Butler.

(2) That the new agreement did not extend the time of payment of the notes of Fox, since it could not be pleaded in bar to a suit on the notes, and that for a breach of the covenant contained in the new agreement the sole remedy of Fox would. be an action at law for damages.

1. If the contention of the plaintiff company that there was evidence of assent on the part of the surety company be sound, the evidence being in part oral, a jury should be permitted to pass upon the question. The record of the trial is voluminous, but is in considerable part composed of the objections and discussions by counsel. The testimony itself is disjointed, but intelligible. It amounts to this: That Fox called at the office of the surety company, and was by some one, unidentified, referred to Mr. Tyrrill; that he had some conversations with this gentleman in an attempted adjustment of his financial difficulties; that he suggested that the company should take houses in discharge of his obligations to them; that Fox told Tyrrill that he was making an arrangement with Butler to secure a supplementary loan to finish the houses; that the arrangement. in contemplation would be in the nature of a mortgage, and that Butler would guaranty payments under the contract, so that Fox could settle in cash for everything he needed to finish the buildings. So far the written agreement of November 23 is not drawn into the case, and, as appears by the appellant's own construction, these conversations were had before October 30, 1899, when Tyrrill, in writing and on behalf of the company, agreed that the lien filed by the plaintiff company might be released without prejudice to the holder of the bond issued by that company. Nearly a month later the written contract between the plaintiff company, Fox and Butler was executed. There is testimony from Fox that he thinks that

Tyrrill was shown a draft of the contract which was subsequently executed on November 23, but nowhere has a scrutiny of the evidence developed that there was assent of any kind given by the surety company to the execution of the new contract. The evidence is that Tyrrill had no authority to assent, nor did he, in fact, attempt to assent. There is, perhaps, a confusion of dates which has led the appellants to press this part of their argument. They have not, however, succeeded in pointing us to any testimony requiring a submission to the jury of the question whether the surety company assented to the execution of the agreement of November 23. Nor is there any evidence that the plaintiff company at the time of making the agreement of that date reserved its right to hold the surety company liable on the bond given to secure the payment of the notes, which, by the agreement of November 23, the plaintiff company agreed not to compel for a period of four months.

2. The agreement of November 23 provided that the plaintiff company, in consideration of the promises of Fox and Butler, would not bring suit on the notes, for the payment of which the defendant company was surety. This was more than a mere forbearance on the part of the plaintiff company. It disabled them from suing on the notes of Fox. A surety has the right to require a strict compliance with the terms of the contract of suretyship. Any alteration of the contract by the principal party without the consent of the surety is fatal to its validity, as against the surety. This is true although the surety sustains no injury by the change and even if the change be for his benefit: Nesbitt v. Turner, 155 Pa. 429; Austin Mfg. Co. v. Duerr, 19 Pa. Superior Ct. 560.

It is a rule well established that the surety shall not be bound beyond the extent of his engagement, which appears from the very terms of the contract and the nature of the transaction to have been in contemplation at the time of entering into it, and that his liability cannot without his consent be extended, enlarged or varied, either by the obligee or by operation of law: Bensinger v. Wren, 100 Pa. 500 ; American Telegraph Co. v. Lennig, 139 Pa. 594. The right of the principal to postpone the fulfilment of the contract of suretyship is at variance with that of the surety to demand its punctual performance, or to perform it himself and sue for indemnity, and generally any act

of the creditor which prevents the surety from insisting on the fulfilment of the contract as originally made, or which entitles the principal debtor to delay, is a ground of defense in an action against the surety: Phœnix Brewing Co. v. Rumbarger, 181 Pa. 251.

The effect of the agreement of November 23, founded upon a good consideration, was to preclude the plaintiff company from collecting the notes of Fox for the period for which the plaintiff company agreed not to sue. The surety company's right of substitution in equity was by the act of the plaintiff company injuriously affected: Grayson's App., 108 Pa. 582. When a creditor makes an agreement by which he disables himself from bringing suit, without the consent of the surety, he acts against equity and ought not to hold the surety responsible: Monsarratt v. Equitable Trust Co., 14 Pa. Superior Ct. 545; Cope v. Smith, 8 S. & R. 110. Had the surety company gone forward and lifted Fox's notes, they would have been clogged in collection by the agreement of the plaintiff company not to sue upon them for four months. Therefore it appears that by the contract of November 23, the terms of the original suretyship were not only varied but changed to the injury of the surety.

This view of the case is based upon the construction and legal effect of the writings of the parties. The question is one of law which must be determined against the plaintiff company. It is in part true that the position of a surety was originally surrounded by safeguards by the law, because that position was often voluntarily and gratuitously assumed as an act of kindness, and that the entering of surety bonds has now become a business for the transaction of which corporations are created who are compensated for their services. This new condition may detract from any sentimental considerations bearing upon the responsibilities, but it has not yet resulted in changing principles of law affecting the general rights of sureties.

The judgment entered for the defendant in this case is a result of the application of these principles, and must be sustained.

Judgment affirmed.