Cancelmo's Estate.

Argued April 20, 1932. Before FRAZER, C. J., SIMP-
SON, SCHAFFER, MAXEY and LINN, JJ.

*Grover C. Ladner,* of *Ladner & Ladner,* and *Frank A.
Harrigan,* with them *H. Crowell Pepper,* for appellant.
—Where a written contract guarantees the payments of
sums borrowed "at maturity" without any provisions au-
thorizing renewals of notes and the appellee at maturity
surrenders the principal debtor's notes and accepts re-
newal notes without knowledge or consent of the surety,
such action is an extension of time of payments so as to
discharge the surety: Yubas v. Mahransky, 300 Pa. 507;
Washington Bank v. Barrington, 2 P. & W. 27; Young
v. Bonding Co., 228 Pa. 373; Bessmer Coke Co. v. Glea-
son, 223 Pa. 84; Barnett v. Reed, 51 Pa. 190; Bauschard
Co. v. Fidelity & Casualty Co., 21 Pa. Superior Ct. 370;
Bensinger v. Wren, 100 Pa. 500; Am. Tel. Co. v. Lennig,
139 Pa. 594; Nesbitt v. Turner, 155 Pa. 429; Austin
Mfg. Co. v. Duerr, 19 Pa. Superior Ct. 560; Ayers v.
Wattson, 57 Pa. 360; Moorehead v. Duncan, 82 Pa. 488;
Moritz's Est., 239 Pa. 375.

Where such a guarantee contains no specific provi-
sions guaranteeing preëxisting debts a surety is not li-
able for a preëxisting debt evidenced by a discounted
note not yet matured which note the appellee by arrange-
ment with the principal debtor, but without knowledge
or consent of surety, surrenders and takes a new note so

as to bring it within the guarantee: Tarentum Realty Co. v. McClure, 230 Pa. 266.

Where the appellee claiming against a surety under a contract of guaranty and having in its possession a note payable to the principal debtor, fails to collect the same and permits it to be barred by the statute of limitations, the surety may claim credit to the amount of the collateral note so lost by appellee's neglect: Kemmerer v. Wilson, 31 Pa. 110; Hughes v. Rankin, 7 Phila. 175; Hawk v. Geddis, 16 S. & R. 23.

*Robert P. Shick,* for appellee.—It was plainly a guaranty of any indebtedness of the Growers Sales Company, as debtor, to appellee, in a sum not to exceed $35,000 within the term "prior to May 31, 1927," as was found upon abundant evidence to sustain it, by the orphans' court en banc in its opinion of July 31, 1930, and there could be no question as to an extension of time to debtor without the consent of the surety,—to work a discharge of the surety.

Appellants beg the whole question in charging the appellee with neglect under the circumstances and in assuming that the claim upon the note of I. Cohen & Sons is now barred by the statute of limitations. Under the law of Florida, when all of its relevant provisions are considered, it is improbable that the statute of limitations can be successfully pleaded.

Findings of fact by a chancellor, when supported by evidence or reasonable inferences therefrom, have the effect of a verdict: Glenn v. Trees, 276 Pa. 165, 167; Rokeach v. Imp. Metal Polish Co., 295 Pa. 366; Houghton v. Kendrick, 285 Pa. 223, 226; Bishoff v. Valley Dairy Co., 302 Pa. 125, 130; Rankin v. Rodgers, 302 Pa. 17, 19.

OPINION BY MR. JUSTICE SCHAFFER, June 30, 1932:

In the adjudication of the estate of Thomas J. Cancelmo, a claim was presented by the Citizens Bank &

Trust Company of Tampa, Florida, on two promissory notes aggregating $35,000, payment of which it was alleged by the claimant has been guaranteed to it in writing by Cancelmo in his lifetime. The court below allowed the claim and this appeal follows.

The controverted question is the scope of the contract of guaranty, which admittedly the decedent, with others, signed. It reads, omitting the immaterial parts: "That for and in consideration of the sum of one dollar to each of us in hand paid by the Citizens Bank and Trust Company of Tampa, Florida,......and in further consideration that loans and advances hereinafter referred to *are being and are to be made at our request,* we, the undersigned *stockholders and officers* of the Growers Sales Company, Inc.......do, jointly and severally, hereby guarantee to the said Citizens Bank and Trust Company the payment at maturity of *any and all sums* which the said Citizens Bank and Trust Company may lend or advance to the said Growers Sales Company or which the Growers Sales Company may *in any way owe* to the Citizens Bank and Trust Company by reason of indorsements, acceptances, over-drafts, drafts, or in any other way whatever, up to and not exceeding, the sum of...... $35,000.00. It being understood that this guarantee *is a continuing guarantee covering all sums borrowed* prior to May 31, 1927, and is to guarantee to the Citizens Bank and Trust Company the payment at maturity *of any indebtedness* which said Growers Sales Company *may owe* to said bank, but not to exceed at any time the said sum of $35,000.00." (The italics above and below are the writer's.)

The appellants advance three propositions to confute the decision of the court below: (1) That the undertaking of the decedent was a guaranty of borrowed sums "at maturity" without any provision authorizing renewal of notes, and as the bank surrendered the principal debtor's notes and accepted renewal notes without the knowledge or consent of the surety, the time of pay-

ment was thereby extended and the surety was discharged. (2) That the guaranty contains no specific provision covering preëxisting debts and hence the surety was not liable for such a debt evidenced by a note not yet matured, which note the bank by arrangement with the principal debtor, and without the knowledge or consent of the surety, surrendered to the principal debtor, taking a new note so as to bring it within the guaranty. (3) That the bank having in its possession a note payable to the principal debtor, failed to collect it, and permitted it to be barred by the statute of limitations, and hence the estate of the decedent is entitled to credit for the amount of this note.

The main issue is the first one, that the guaranty covered only notes as they matured, not renewals. The auditing judge so concluded, but the court in banc determined otherwise. We are of opinion that the decision of the court in banc was correct.

If the words "at maturity" are alone looked at and emphasized, appellant's position is a very strong one. That, however, is not the way to view the undertaking of guaranty. All its language must be considered: Knickerbocker Trust Co. v. Ryan, 227 Pa. 245, 250; Orth v. Board of Education, 272 Pa. 411, 415; Nick v. Craig, 301 Pa. 50; Randal v. Jersey Mortgage Inv. Co., 306 Pa. 1. When this is done, the words "at maturity" no more stand out from the paper than do certain other of its provisions such as "loans and advances are being *and are to be made* at our request," "hereby guarantee the payment at maturity of *any and all sums* which the [bank] *may lend* or which the [company] may *in any way owe* to the [bank] by reason of indorsements, acceptances, overdrafts [to which the words 'at maturity' could not apply in the way appellants would use them], drafts, *or in any other way whatever.* This guarantee *is a continuing guarantee covering all sums borrowed.*" When all these clauses are taken into account, the words "payment at maturity" mean, not as appellants contend,

the guarantee of the payment of each individual note as it matures, with the implied interdiction of renewals, but the payment of the entire indebtedness due the bank by the corporation when the bank demanded its payment provided it was due, up to the limit set forth in the agreement. We think the argument of appellants as to their decedent's rights and standing as a surety is pitched upon the principles which apply to sureties who are strangers in interest to the matter which they guarantee, and whose only relation to it is that of suretyship. Here, the decedent was not simply a surety, but he had a personal interest in the company whose obligations he was guaranteeing since he was one of its officers and stockholders. The law is not so tender to him as to one who was not being personally obliged by the loan of the bank's money: Richardson v. Draper, 87 N. Y. 337, 347; Matchett v. Winona Assembly, 185 Ind. 128, 113 N. E. 1, 4; First Nat. Bank v. Livermore, 90 Kan. 395, 133 Pac. 734 (47 L. R. A., N. S. 274). This is but a further application of the well-known principle that the rule of strict construction is to be applied only in favor of a gratuitous surety and not a compensated surety: Young v. American Bonding Co., 228 Pa. 373; Methodist Epis. Church of Franklin v. Equitable Surety Co., 269 Pa. 411; 50 Corpus Juris, pages 78 et seq.

The guaranty is dated the blank day of August, 1926. Contemporaneously with or immediately subsequent to its execution, on August 18, 1926, the bank took from the corporation two notes at ninety days, one for $25,000 and the other for $10,000. The bank did not require payment of these notes on their due date, but, without notice to or knowledge of the decedent, surrendered them to the corporation and accepted renewals of them maturing February 14, 1927. The decedent died January 14, 1927. Following his death the notes were twice again renewed by notes which came due on June 14, 1927. It is these last notes upon which claim is made.

Appellants call to our attention the familiar principle last invoked by us in Yubas v. Makransky, 300 Pa. 507, that the obligation of a surety cannot be extended, by implication, beyond the terms of his contract. We do not intend to place limitations upon this rule where the circumstances call for its application, but here in our view the obligation of the surety is within the terms of the contract he executed when its complete text is brought into view. In Phœnix Brewing Co. v. Rumbarger, 181 Pa. 251, the surety was held liable on a bond conditioned for payment by the principal of all accounts in a course of dealing between him and plaintiff "when and as often as the same *may fall due,* or when thereunto legally required," after the principal had extended the time of payment by giving his creditor judgment notes for the amounts then due. See also 50 Corpus Juris, page 136, section 225 ("Principal and Surety"). Moreover even on appellants' restricted construction, much could be said in favor of the proposition that "payment at maturity" means actual payment of the indebtedness due the bank, not conditional payment. "Payment in commercial paper constitutes only conditional payment, and since conditional payment does not discharge the original indebtedness, it does not discharge the surety for such indebtedness:" DeRoy's Est., 305 Pa. 541, 544, and authorities therein cited. Much reliance as sustaining their position is placed by appellants on American Trust Co. v. Louderback, 220 Pa. 197, where the language in the recital and condition of the bond was to protect the obligee "from all loss......by reason of the nonpayment at maturity of any commercial paper made or endorsed by Samuel K. Reichner" and where we held that the renewal notes were not covered. In the contract now being considered the language is much broader and more embracing.

We now come to appellants' second position, that the guaranty contains no specific provision covering preexisting debts and hence the surety was not liable for such

a debt evidenced by a note not yet matured, which note the bank, by arrangement with the principal debtor, and without the knowledge or consent of the surety, surrendered to the principal debtor, taking a new note so as to bring it within the guaranty. When account is taken of the fact that the note in question, together with the other note for $25,000 makes up the exact amount covered by the guaranty, the record would have to be clearer than it is in order to reach the conclusion that the $10,000 note was not covered by the contract. Again referring to its language, we see it says "loans *are being* and are to be made at our request." Certainly "are being made" may refer to existing loans. Further it says that the signers "guarantee the payment of any and all sums which [the corporation] may *in any way* owe to [the bank] up to the sum of $35,000.00. [This guarantee] is a continuing guarantee covering *all sums borrowed prior to May 31, 1927,* [the note in question was given prior to that date] and is to guarantee the payment of *any* indebtedness which the company may owe to said bank" not exceeding the amount named. It cannot be convincingly argued that this language does not cover the obligation now in question. The auditing judge found that the $10,000 note was not a substituted one, but a new obligation for a new debt. We might well rest our conclusion on this finding, but have preferred to meet appellants' position as they have advanced it.

This brings us to the third and last question raised by appellants growing out of the facts that the appellee bank had in its possession a note for $2,500 payable to the Growers Sales Company and did not collect it, but, so it is alleged, permitted it to be barred by the statute of limitations. Appellants claim they are entitled to credit to the amount of this note. It was made by I. Cohen & Sons, endorsed by the Growers Sales Company and delivered by it to the appellee as general collateral for the $35,000 loan. When delivered to appellee, it was overdue. The bank did not proceed at law for its col-

lection, because its information was that the makers were without resources and it was not willing to put up the money necessary for attorney fees and the expenses of suit. As we understand the situation, however, suit has now been begun by the appellants or some one acting in their behalf to collect it from the makers in Pittsburgh where they reside. There is no testimony upon which it can be found that any loss has resulted from the delay in bringing suit. Appellants took no action and requested none by the appellee for a considerable period after they knew of the note. Furthermore, it appears that the note was tendered by the bank to Edwards, another of the guarantors, for such action as he might desire to take. In addition to this, it is still unknown whether the note is barred by the statute of limitations, depending on whether it is an obligation covered by the law of Florida, where the limitation is five years, or of this State, where it is six.

The decree is affirmed at appellants' cost.